**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| MICHAEL GOLDEN, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. _____ |
| E. I. DU PONT DE NEMOURS AND CO. ("DUPONT"), a Delaware corporation, | ) ) ) | JURY TRIAL DEMANDED |
| Defendant. | ) ) | |

**COMPLAINT**

Plaintiff Michael Golden ("Plaintiff") makes the following allegations against E. I. Du Pont de Nemours and Co. ("DuPont" or "Defendant") based on an investigation by Plaintiff's counsel that included, among other things, review and analysis of various news articles, Defendant's website, and other third party websites. In support of Plaintiff's Class Action Complaint ("Complaint"), Plaintiff alleges as follows:

**<u>NATURE OF THE ACTION</u>**

1.      This is a class action involving Defendant's Imprelis weed repellant. Imprelis has unjustifiably injured or killed, and continues to injure or kill, hundreds of thousands of trees nationwide.

2.      Imprelis is marketed as a safe means to repel and remove weeds. Unbeknownst to Plaintiff and the class ("Class"), Imprelis is lethal to certain varieties of trees. Most notably, it is lethal to Norway Spruce and White Pine, among other evergreens, which are common ornamental trees.

3.      Widespread reports of damage and death to trees have surfaced since Imprelis was introduced to the market in late 2010. Media outlets have reported that damages to trees are

projected to be in the millions of dollars.

4.       In June 2011, Defendant issued a public statement acknowledging that it received various reports of harm to trees caused by Imprelis.  Defendant said it was investigating the claims, and it warned that Imprelis should not be applied where Norway Spruce or White Pine trees are in close proximity to the grounds being treated.  Defendant did not offer to compensate affected individuals in any way for the harm caused by Imprelis.

5.       Imprelis was apparently rushed to market, taking fewer years than is typical for a product of its type.  Defendant conducted inadequate pre-market testing of Imprelis during its rush to market.

6.       Harm to trees is occurring regardless of whether Imprelis is applied in accordance with the instructions on its label, illustrating its defective nature.

7.       Trees affected by Imprelis have become unsightly and many have died, adversely affecting the beauty and Class members' enjoyment of their property, and diminishing the value of the property.

8.       Plaintiff herein seeks to recover money damages to the Class for items including but not limited to removal and replacement of dead trees, treatment of injured trees, harm to the aesthetics of Class members' property, and related out of pocket costs.  Plaintiff also seeks injunctive relief requiring Defendant to make Imprelis safer for trees and the environment.

## JURISDICTION AND VENUE

9.       This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from Defendant, there are more than 100 Class members nationwide, and the aggregate amount in controversy exceeds $5 million.  This Court has personal jurisdiction over Defendant because

Defendant is headquartered in Delaware and conducts business in this state.

10.     Venue properly lies in this District pursuant to 28 U.S.C. § 1391(a) because this is the District in which Defendant resides, and a substantial part of the events giving rise to Plaintiff's claims occurred here.

## PARTIES

11.     Plaintiff Michael Golden is a resident of Pennsylvania. His residential property was treated with Imprelis in May 2011 by his landscaper. Within a few weeks of treatment, several of Plaintiff's trees became brown and wilted. The problem got progressively worse. The affected trees include Norway Spruce, Alberta Spruce, and Leland Cypress trees. At least seven of the trees are now dead. Many of his other trees are dying, including three in front of his house that are the main focal point when driving into the driveway. Plaintiff contacted a tree expert, who concluded that the remaining damaged trees in his yard will likely die. The aesthetics of Plaintiff's property have significantly deteriorated and will continue to do so. Plaintiff has suffered damages including but not limited to dead and injured trees and depreciation in the value of his property.

12.     Defendant DuPont is incorporated in Delaware. Its principal place of business is located at 1007 Market Street, Wilmington, DE 19898.

## FACTUAL ALLEGATIONS

13.     Defendant began selling Imprelis in late 2010. It is sold only to licensed turf management professionals and landscapers through a limited network of authorized DuPont distributors. The licensed professionals in turn use Imprelis to treat landscapes of their own (*e.g.*, golf courses, athletic fields, cemeteries, etc.) or those of their landscaping clients.

14.     Imprelis is an herbicide that controls weeds with a new active ingredient called

aptexor.  Imprelis is extremely powerful and allows for the control of weeds with an application of just six ounces per acre.  Imprelis costs approximately $750 per gallon.

15.     Defendant's website touts that Imprelis is the "most scientifically advanced turf herbicide in over 40 years."  It also states that Imprelis has a "low environmental impact."

16.     Imprelis was reportedly rushed to market.  According to an article in <u>Lawn &</u> <u>Landscape Magazine</u> dated March 14, 2011, while it typically takes a decade or longer to bring new herbicide chemistry to the market, Imprelis moved from the lab to the market in just eight years.   On information and belief, Defendant conducted inadequate pre-market testing of Imprelis during its rush to market.

17.     According to an article in <u>Lawn & Landscape Magazine</u> dated June 28, 2011, soon after Imprelis was introduced, users and university researchers in the Northeast and Midwest began reporting curling needles, severe browning, and dieback in trees near areas that had been treated with Imprelis.  Researchers from Michigan and Indiana say they've seen symptoms in evergreens, mainly Norway Spruce and White Pine.  A professor of horticulture and forestry at Michigan State University was quoted as saying:

> On the spruces, what we see is the current year's growth.  So the newly emerging shoots will brown up or wilt, and then you sometimes get a twisting appearance to them.
>
> Largely based on photos that have been sent to me, it's almost the whole tree is affected.
>
> . . . .
>
> What's going to happen is if those new buds are killed, those new shoots are killed, it's going to be difficult for the tree to produce new buds on those shoots, so it will produce buds on the older shoots and sprout out from there. . . .   The trees may not be dead, but as far as the aesthetic for a landscape tree, it would be pretty difficult for a homeowner to want to keep that tree around.

18.     According to the article, the Office of the Indiana State Chemist has received 40 complaints thus far regarding Imprelis. This was regarded as a large number for any one type of situation. A representative of the office was quoted as follows:

> We're seeing things that look like growth regulator type of injury where you're seeing the twisting and curling of the new growth. . . . The new growth eventually turns brown and looks droopy. It seems to start on the tips of the branches. Sometimes it starts high in the tree, the top of the tree, and works its way down . . . .

19.     Because the active ingredient in Imprelis is new, there is little historical information available regarding how to treat affected trees. This contributes to Class members' damages, as they cannot readily treat their trees.

20.     On June 17, 2011, Defendant sent a letter to its turf management customers acknowledging that DuPont received a number of complaints about Imprelis' adverse impact on trees. The letter noted that most complaints involved Norway Spruce or White Pine, and that Defendant was continuing to investigate the complaints. Defendant warned that users should not apply Imprelis where Norway Spruce or White Pine are present on, or in close proximity to, the property being treated.

21.     Imprelis harms trees even when applied according to its instructions. An article in the Detroit Free Press dated July 10, 2011, noted that "some landscapers appear to be following directions and spraying Imprelis away from the trees, but they still have browning." This illustrates that Imprelis is too dangerous to use even when applied away from trees.

22.     According to a statement released by Michigan State University on June 24, 2011, researchers at the school noted that affected trees appear to be absorbing Imprelis that has been applied to soil outside the tree's drip line (*i.e.*, beyond the area directly under the circumference of the tree's branches).

23.     The <u>New York Times</u> reported on July 14, 2011, that one landscaper made 1,000 applications of Imprelis and received 350 complaints of dead trees thus far.  The landscaper is replacing dead trees and has already incurred approximately $150,000 in replacement costs. Similarly, the <u>Detroit Free Press</u> noted that one landscaper had more than 600 customers, of which 160 experienced tree damage from Imprelis.

24.     Plaintiff seeks to recover money damages to the Class for items including but not limited to removal and replacement of dead trees, treatment of injured trees, depreciation in the value of land caused by harm to trees, and related out of pocket costs.  Plaintiff also seeks injunctive relief requiring Defendant to make Imprelis safer for trees and the environment.

## CLASS ACTION ALLEGATIONS

25.     Plaintiff brings this action individually and on behalf of all others similarly situated pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).  The Class is defined as follows:

> All persons or entities in the United States whose property was exposed to Imprelis from the date of the product's inception through the date of trial.

26.     The Class does not include Defendant, Defendant's officers or directors, or the judge to whom this case is assigned.

27.     Plaintiff believes, and thereon alleges, that the Class consists of at least thousands of Class members.  Media outlets have reported that Imprelis is widely-used throughout the country, and harm is expected to occur to hundreds of thousands of trees with damages totaling millions of dollars. The Class is so numerous that joinder of all Class members is impracticable.

28.     There are questions of law or fact common to the Class, including but not limited to the following:

      a.     whether Imprelis is harmful to trees even when used as directed;

      b.     whether Defendant's conduct in designing and testing Imprelis constituted

actionable negligence;

      c.      whether Defendant's conduct constituted a breach of the implied warranty of merchantability;

      d.      whether Imprelis is defective as designed;

      e.      whether Defendant's conduct constituted an unfair trade practice; and

      f.      whether the Class was damaged as a result of Defendant's actions.

29.      The claims of Plaintiff are typical of the claims of the Class he seeks to represent. The claims of Plaintiff and Class members arise from the same set of operative facts with respect to Defendant's underlying conduct in producing, testing and marketing Imprelis and the product's effect on trees.

30.      Plaintiff will fairly and adequately represent the interests of the Class. Plaintiff has no interests that are antagonistic to or that irreconcilably conflict with those of other Class members. Further, Plaintiff has retained competent counsel experienced in the prosecution of class action litigation.

31.      Questions of law or fact common to the Class predominate over any questions effecting only individual Class members.

32.      A class action is superior to all other available methods for the fair and efficient adjudication of Class members' claims. Disposition of the claims via the class action device will provide substantial benefits to the parties and the judicial system. Disposition as a class action will provide redress for claims that may be too small to support the expense and burden of individual complex litigation.

33.      Plaintiff and Class members have suffered similar harm as a result of Defendant's conduct. Certification of a class action to resolve these disputes will reduce the possibility of

repetitious litigation involving thousands of Class members.

34.     Prosecution of separate actions by individual members of the Class would likely create a risk of inconsistent or varying adjudications with respect to individual members of the Class thereby establishing incompatible standards of conduct for Defendant or would allow some Class members' claims to adversely affect other Class members' ability to protect their interests.

35.     Class certification is appropriate under Fed. R. Civ. P. 23, as the Class satisfies the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3).  Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) with respect to the injunctive relief requested.

## COUNT I
## NEGLIGENCE

36.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

37.     Defendant owed a duty to Plaintiff and the Class to produce and market only products that do not unreasonably harm trees.   Defendant breached that duty by producing and marketing Imprelis, which is indeed harmful to trees.

38.     Defendant also owed a duty to perform adequate testing of Imprelis before releasing it to the market.  Defendant breached that duty, evidenced by the fact that Imprelis began damaging and killing trees on a wide-scale basis soon after the product was released to the market.

39.     Defendant's breach of its duties proximately caused the harm suffered by Plaintiff and the Class as set forth herein.

40.     Plaintiff and the Class suffered damages including but not limited to injuries and death to their trees, diminution in value of their land, and related out of pocket costs.

41.     Defendant is liable to Plaintiff and the Class for all compensable damages in an

8

amount to be determined at trial.

42.     Defendant intended and foresaw that its product would be purchased by professional landscapers and applied to the properties of Plaintiff and the Class. The type of harm that resulted – injuries to trees – was a type of harm that could be reasonably foreseen as a possible consequence of the sale of a chemical herbicide.

**COUNT II**
**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
**(6 *Del. C.* § 2-314(2)(c))**

43.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

44.     Defendant is liable to Plaintiff and the Class for its breach of the implied warranty of merchantability pursuant to the Delaware Uniform Commercial Code ("UCC"), 6 *Del. C.* § 2-314(2)(c).

45.     Under the UCC, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. 6 *Del. C.* § 2-314(2)(c). Defendant is a merchant with respect to herbicides. Thus, an implied warranty of merchantability exists for its sales of Imprelis.

46.     Under the UCC, to be merchantable, goods must be fit for the ordinary purposes for which such goods are used. 6 *Del. C.* § 2-314(2)(c). Imprelis is not fit for the ordinary purposes for which herbicides are used because Imprelis harms trees on a wide-scale basis.

47.     Imprelis is not merchantable because, had Plaintiff and the Class known that it harmed trees, it would not have passed in trade without objection nor would it have been deemed fit for the ordinary purpose for which herbicides are used.

48.     A seller's implied warranty of merchantability extends to any person who may

reasonably be expected to use or be affected by the goods and who is injured by the goods. 6 *Del. C.* § 2-318. Privity of contract is not required for the warranty to extend to such person. Plaintiff and Class members were reasonably expected to use or be affected by Imprelis because Imprelis was manufactured and sold for the express purpose of being applied to Class members' property. Accordingly, Defendant's implied warranty of merchantability extends to the Class.

49.    Plaintiff and the Class suffered damages including but not limited to injuries and death to their trees, diminution in value of their land, and related out of pocket costs.

50.    Defendant is liable to Plaintiff and the Class for all compensable damages in an amount to be determined at trial.

51.    Defendant received notice of consumers' damages by virtue of the numerous complaints it received, as acknowledged in its letter to customers dated June 17, 2011. Defendant also received notice of damages by virtue of media reports highlighting the widespread harm caused by Imprelis.

**COUNT III**
**PRODUCTS LIABILITY (RESTATEMENT THIRD OF TORTS)**

52.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

53.    Defendant is liable under a products liability theory pursuant to the Restatement (Third) of Torts: Products Liability §§ 1-2.

54.    Defendant is engaged in the business of selling herbicides.  Defendant has sold and continues to sell a defective product that kills trees.  As such, Defendant is subject to liability for damages caused by its defective product under the Restatement (Third) of Torts: Prods. Liab. § 1.

55.    Imprelis is defective because, at the time of sale, it contained and continues to

10

contain a design defect. The design is defective because the foreseeable risks of harm – namely damage to trees – could have been reduced or avoided by the adoption of an alternative design. Numerous other herbicide designs exist in the marketplace, sold by Defendant and others, that do not kill trees. The omission of an alternative safer design renders Imprelis not reasonably safe in violation of the <u>Restatement (Third) of Torts: Prods. Liab.</u> § 2.

56.     The design defect in Imprelis caused harm to Class members' trees.

57.     Plaintiff and the Class suffered damages including but not limited to injuries and death to their trees, diminution in value of their land, and related out of pocket costs.

58.     Defendant is liable to Plaintiff and the Class for all compensable damages in an amount to be determined at trial.

## COUNT IV
## DECEPTIVE TRADE PRACTICES (6 *DEL. C.* §§ 2531-2536)

59.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

60.     Defendant's conduct is in violation of 6 *Del. C.* § 2532(a)(5), which prohibits entities from representing that goods have characteristics or benefits that they do not have. Defendant's conduct is also in violation of 6 *Del. C.* § 2532(a)(12), which prohibits conduct that similarly creates a likelihood of confusion or misunderstanding.

61.     Defendant falsely stated on its website that Imprelis has a low environmental impact. Also, Defendant failed to disclose that Imprelis is fatal to trees. These disclosures and omissions were misleading in violation of 6 *Del. C.* § 2532(a)(5) and (12).

62.     The statute expressly states that a plaintiff need not prove actual confusion or misunderstanding. 6 *Del. C.* § 2532(b). In other words, neither actual misunderstanding nor reliance on the misrepresentation is a necessary element.

63.     As a direct and proximate result of Defendant's violation of 6 *Del. C.* § 2532(a)(5) and (12), Plaintiff and the Class have suffered and will continue to suffer harm as alleged herein.

64.     Plaintiff and the Class suffered damages including but not limited to injuries and death to their trees, diminution in value of their land, and related out of pocket costs.

65.     Defendant is liable to Plaintiff and the Class for all compensable damages in an amount to be determined at trial.

66.     In addition to compensatory damages, Plaintiff also seeks the injunctive relief requested above pursuant to 6 *Del. C.* § 2533(a).

67.     Plaintiff also seeks an award of reasonable attorneys' fees, costs, and treble damages pursuant to 6 *Del. C.* § 2533(b) and (c).

## COUNT V
## CONSUMER FRAUD (6 *DEL. C.* §§ 2511-2527)

68.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

69.     Defendant's conduct is in violation of 6 *Del. C.* §§ 2512 and 2513, which prohibit unfair or deceptive practices in the conduct of business.

70.     Specifically, 6 *Del. C.* § 2513(a) states:

The act, use or employment by any person of any . . . misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, . . . whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice.

71.     Defendant made misrepresentations and omissions regarding the safety of Imprelis and its impact on trees. Defendant falsely stated on its website that Imprelis has a low environmental impact. Also, Defendant failed to disclose that Imprelis is fatal to trees. These

disclosures were misleading in violation of 6 *Del. C.* §§ 2512 and 2513.

72.   Defendant intended for Class members to rely on its representations and omissions in purchasing Imprelis and/or allowing Imprelis to be applied to their property.

73.   Neither scienter (*i.e.*, intent to defraud) nor reliance by Class members on the misrepresentations is required under 6 *Del. C.* § 2513.

74.   Defendant's conduct constitutes an unfair or deceptive practice under 6 *Del. C.* § 2512.

75.   As a direct and proximate result of Defendant's violation of 6 *Del. C.* §§ 2512 and 2513, Plaintiff and the Class have suffered and will continue to suffer harm as alleged herein.

76.   Plaintiff and the Class suffered damages including but not limited to injuries and death to their trees, diminution in value of their land, and related out of pocket costs.

77.   Defendant is liable to Plaintiff and the Class for all compensable damages in an amount to be determined at trial.

78.   In addition to compensatory damages, Plaintiff also seeks the injunctive relief requested above pursuant to 6 *Del. C.* § 2523.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment against Defendant and award relief including but not limited to the following:

a.   An order certifying this action as a class action and appointing Plaintiff and its counsel to represent the Class;

b.   Monetary damages for items including but not limited to: (i) removal and replacement of dead trees; (ii) treatment of injured trees; (iii) diminution in value of Class members' land resulting from harm to trees; and (iii) related out of pocket costs;

  c.  Injunctive relief requiring Defendant to make its Imprelis product safer for trees

and the environment;

  d.  The costs of bringing this suit, including reasonable attorneys' fees and expenses;

  e.  Treble damages; and

  f.  All other relief to which Plaintiffs and the Class may be entitled and which the

Court deems proper.

        PRICKETT, JONES & ELLIOTT, P.A.


        J. Clayton Athey (DE Bar No. 4378)
        1310 King Street, Box 1328
        Wilmington, DE 19899
OF COUNSEL      Tel: (302) 888-6500
        Fax: (302) 658-8111
BERGER & MONTAGUE, PC  jcathey@prickett.com
Todd Collins
Jon Lambiras
1622 Locust St.
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604
tcollins@bm.net
jlambiras@bm.net

ANN MILLER, LLC
Ann Miller
834 Chestnut St.
Suite 206
Philadelphia, PA 19107
Tel: (215) 238-0468
Fax: (215) 574-0699
am@attorneyannmiller.com

Dated:  July 20, 2011